UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MYRON BANKS,

    Petitioner,

v.                         CASE NO. 14-10140
                           HONORABLE JOHN CORBETT O'MEARA

DANIEL H. HEYNS,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Petitioner Myron Banks has filed an application for the writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254. The habeas petition challenges Petitioner's state conviction for arson of a dwelling house, Mich. Comp. Laws § 750.72a. Petitioner purports to have newly discovered evidence that his conviction was based on unreliable evidence. He also alleges that his no-contest plea to the charge was the result of ineffective assistance of counsel and that the state court's refusal to set aside his plea violated his right to due process. The State urges the Court to deny relief on the ground that the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. The Court agrees that Petitioner's claims do not warrant habeas relief. Accordingly, the petition will be denied.

## I. Background

**A. The Plea, Sentence, and Appeals**

The felony arson charge arose from allegations that Petitioner intentionally set fire to his home in Clinton Township, Michigan in 2009. In addition to the criminal case, Plaintiff was involved in a civil action against the company that insured the house.

On January 26, 2011, the day set for the criminal trial, Petitioner pleaded no-contest to the arson charge in Macomb County Circuit Court. The factual basis for the plea was the Clinton Township Police Department's report, which stated that,

> on or about January 28th of 2009 in the Township of Clinton, County of Macomb, . . . the Defendant was living at [16234] Timberview, Clinton Township . . . That just prior to the fire the defendant was home. That this defendant was the last one to leave the home and lock up. Moments after he left the . . . residence, the fire was observed by a neighbor . . . . [A]n accelerant was detected by a fire canine unit. The accelerant was found in the defendant's bedroom. The fire consumed the bedroom of the home. The Clinton Township police and fire department responded.

(Plea Tr., 21, 23, Jan. 26, 2011.)

In exchange for Petitioner's plea, the prosecutor dismissed a habitual offender notice and agreed to recommend a minimum sentence of no more than six months in the county jail. (*Id.* at 5, 15, 17.)[1] The trial court determined that there was a sufficient factual basis for Petitioner's plea and accepted his plea as voluntary, understanding, and accurate. (*Id.* at 24.)

The day after his plea, Petitioner asked his plea attorney, Steven Scharg, to move to withdraw his plea. Although Mr. Scharg did not file a formal motion to withdraw the plea, he informed the state trial court by letter of Petitioner's desire to withdraw his

---

[1] As a habitual offender, Petitioner was facing a minimum sentence of twelve to twenty-five months in prison upon conviction and a maximum sentence of thirty years. Without the habitual offender notice, the sentencing guidelines called for a minimum sentence of twelve to twenty months and a maximum sentence of twenty years. (Plea Tr., 5-10, Jan. 26, 2011).

plea. And, at a hearing on March 31, 2011, Mr. Scharg explained to the trial court that Petitioner wanted to set aside his plea because he was innocent of the charge. Petitioner added that he was unclear about some things at the time of his plea and that he wanted to proceed to trial. (Mot. Hr'g, 3-4, Mar. 31, 2011.) The trial court denied Petitioner's request to withdraw his plea on grounds that Petitioner was not pressured into pleading no contest, that he indicated at the plea proceeding it was his own free choice to enter the plea agreement, and that he had not provided the court with a valid reason to allow him to withdraw his plea. (*Id.* at 4-6.)

Petitioner subsequently acquired new counsel (his current attorney) and moved to set aside his plea on the ground that Mr. Scharg had provided ineffective assistance. On June 9, 2011, the trial court held an evidentiary hearing on Petitioner's motion, and on June 16, 2011, the court denied the motion and sentenced Petitioner to 120 days in jail, followed by two years of probation.

Petitioner appealed his conviction on grounds that: (1) his plea was involuntary, based on a factual error, and coerced by his attorney's erroneous advice and ineffective assistance; and (2) the trial court's refusal to set aside the plea deprived him of due process because the plea was involuntary, he consistently proclaimed his innocence, and there was no physical or scientific evidence of guilt. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *See People v. Banks*, No. No. 306929 (Mich. Ct. App. Dec. 28, 2011). On July 24, 2012, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Banks*, 492 Mich. 856; 817 N.W.2d 66 (2012). On December

26, 2012, the Michigan Supreme Court denied Petitioner's motion for reconsideration. *See People v. Banks*, 493 Mich. 922; 823 N.W.2d 573 (2012).

On January 4, 2013, Petitioner filed a motion for relief from judgment. He claimed to have newly discovered evidence, which demonstrated that the trial court accepted his plea on the basis of unreliable evidence regarding the cause and origin of the fire. The trial court held a hearing on the motion and denied it on the basis that the evidence was not newly discovered. *See People v. Banks*, No. 2010-721-FH (Macomb Cnty. Cir. Ct. Jan. 14, 2013). Petitioner appealed the trial court's decision, but the Michigan Court of Appeals denied leave to appeal because Petitioner failed to establish entitlement to relief under the Michigan Court Rules. *See People v. Banks*, No. 314588 (Mich. Ct. App. Feb. 7, 2013). On September 25, 2013, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Banks*, 495 Mich. 861; 836 N.W.2d 692 (2013).[2]

**B. The Habeas Petitions and Responsive Pleading**

On July 5, 2013, Petitioner filed a habeas corpus petition in this District, along with a motion to stay his case. This Court denied the motion for a stay and summarily dismissed the petition without prejudice because Petitioner's case was pending in the Michigan Supreme Court at the time. *See Banks v. Wickersham*, No. 13-12938 (E.D. Mich. July 16, 2013).

On January 13, 2014, Petitioner filed the pending habeas corpus petition through counsel. The Macomb County Sheriff, whom Petitioner named as the respondent,

---

[2] Justice David F. Viviano did not participate in the decision because he presided over the case in state circuit court.

moved to dismiss the habeas petition because he had released Petitioner from custody months before Petitioner filed his habeas petition. In the alternative, the Sheriff urged the Court to substitute the State of Michigan as the respondent because Petitioner was under state-supervised probation at the time. Petitioner subsequently moved to substitute the Director of the Michigan Department of Corrections as the respondent on the basis that he continued to be constrained by the Department of Corrections.

In an order dated March 5, 2014, the Court denied the Sheriff's motion to dismiss the habeas petition and granted Petitioner's motion to substitute the Director of the Michigan Department of Corrections for the Macomb County Sheriff. In the same order, the Court directed the State of Michigan to file an answer to the petition. On September 17, 2014, the State filed its answer in opposition to the petition, and on October 30, 2014, Petitioner filed a reply to the answer.

## II.  Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

5

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his claims "was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### C.  Analysis

**A.  Whether Petitioner's Allegation of Newly Discovered Evidence Entitles Him to have his Conviction set Aside**

Petitioner claims that, after his conviction, he was permitted to have an expert witness review physical artifacts that the Clinton Township investigators ignored, rejected, and refused to consider when they formed their expert opinion on the cause and origin of the fire that destroyed Petitioner's home. According to Petitioner's expert witness, there was insufficient evidence that the fire was deliberately set. Petitioner argues that this new evidence proves he is innocent and it demonstrates that the trial court accepted his plea on the basis of evidence that is unreliable and has been rejected in the scientific community. He seeks a trial in state court on the ground that his rights under state law and under the Due Process Clause of the United States Constitution were violated by the trial court's reliance on insufficient evidence.

Petitioner's challenge to the factual basis for his plea lacks merit, because "there is no constitutional requirement that a trial judge inquire into the factual basis of a plea." *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975). "The requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution, but rather a requirement created by rules and statutes." *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995).

Similarly, Petitioner's challenge to the sufficiency of the evidence supporting his no-contest plea lacks merit. "[T]here is no constitutional requirement that the State

prove the guilt of a defendant who pleads no contest." *Post v. Bradshaw*, 621 F.3d 406, 427 (6th Cir. 2010). By pleading no contest to the charge against him, Petitioner waived any objection to the sufficiency of the evidence. *Id.* at 426-27.

Generally, the only question on collateral review of a petitioner's conviction is whether his plea was counseled and voluntary. *United States v. Broce*, 488 U.S. 563, 569 (1989). For a plea to be voluntary, knowing, and intelligent, it must be "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The defendant must appreciate the consequences of his waiver of constitutional rights, waive his rights without being coerced to do so, and understand the rights that he is surrendering by pleading guilty or no contest. *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009). Courts must consider all the relevant circumstances when determining whether a plea was voluntary. *Brady*, 397 U.S. at 749.

Petitioner was represented by counsel at his plea, and he stated that he understood the plea agreement, the maximum sentence for his crime, and the rights that he was waiving by pleading no contest. He also stated that no one had promised him anything, other than what was stated on the record, to induce his plea and that no one had threatened him or forced him to plead no contest. He assured the trial court that it was his own choice to plead no contest, and he had no questions about his plea. (Plea Tr. 17-20, Jan. 26, 2011.)

Petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Thus, the state trial court's

conclusion that Petitioner's plea was understanding, voluntary, and accurate was objectively reasonable. Petitioner is not entitled to relief on the basis of his first claim.

**B. Whether Petitioner was Denied Effective Assistance of Counsel and Whether Counsel Had an Impermissible Conflict of Interest**

Petitioner alleges that his plea attorney, Steven Scharg, gave him erroneous advice, was unprepared for trial, and operated under a conflict of interest. The Michigan Court of Appeals found no merit in Petitioner's claim.

### 1. Clearly Established Federal Law

A defendant has the right to effective assistance of counsel when considering whether to accept a plea bargain. *Lafler v. Cooper*, __ U.S. __, __, 132 S. Ct. 1376, 1387 (2012). But to prevail on a claim that trial counsel was ineffective during plea negotiations, the petitioner must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). This requires showing that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. In the context of a guilty plea, a deficient performance is one that fell below an objective standard of reasonableness or was outside the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 56-57.

The "prejudice" prong of the two-part *Strickland* test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. In other words, the defendant "must show [that] the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S. Ct. 1384.

9

### 2. Application

#### a. Counsel's Advice

Petitioner claims that his plea attorney gave him bad advice about the consequence of his no-contest plea. According to Petitioner, attorney Scharg erroneously advised him that a no-contest plea would not impact his civil case against the insurer of the burned property.

Mr. Scharg testified at the evidentiary hearing in state court that he told Petitioner a plea of any kind could affect his civil case and that Petitioner should call his civil attorney. (Evidentiary Hr'g, 34, June 9, 2011.) Petitioner, moreover, admitted at the hearing that he spoke with his civil attorney before pleading no contest and that his civil attorney strongly advised against accepting the plea offer. (*Id.* at 112.) Petitioner nevertheless proceeded to plead no contest and informed the trial court that he was satisfied with Mr. Scharg's advice and services. (Plea Tr. 16-17, Jan. 26, 2011.)

To conclude, it appears from the record that Mr. Scharg did not provide erroneous advice regarding the implications of Petitioner's plea on his civil case. Even if he did, the erroneous advice obviously did not affect the outcome of the plea process because Petitioner pleaded no contest after learning from his civil attorney that his plea would have implications for his civil case. The Court concludes that Mr. Scharg's allegedly incorrect advice did not prejudice Petitioner.

#### b. Counsel's Alleged Failure to Prepare for Trial

Petitioner alleges next that Mr. Scharg was not prepared for trial and, as a result, Petitioner was coerced into accepting the prosecutor's plea offer. Specifically,

Petitioner contends that Scharg failed to consult Petitioner's civil expert witness who would have testified that the fire was not intentionally set. Petitioner also contends that Mr. Scharg failed to contact or interview witnesses who would have provided a true timeline for the fire.

Although Mr. Scharg admitted at the evidentiary hearing that he did not consult Petitioner's expert in the civil case, the failure to consult an expert is not necessarily ineffective assistance, as "[t]here are . . . 'countless ways to provide effective assistance in any given case.' " *Richter*, 562 U.S. at 106 (quoting *Strickland*, 466 U.S. at 689). Mr. Scharg did speak with Petitioner's civil attorney before the date set for trial, and he maintained at the state evidentiary hearing that he was prepared for trial. And he maintained that Petitioner never expressed any concern about his preparation for trial. (Evidentiary Hr'g, 24, 30, 32-33, 60, 62, 73, June 9, 2011.)

Regarding the other potential defense witnesses, Mr. Scharg testified that he interviewed Petitioner's wife, Tamika Banks, more than once, and he included her on his list of defense witnesses. (*Id.* at 25-26.) He did not interview Petitioner's father, Gilbert Banks, or the property appraiser that Petitioner insisted on being called as a witness. But he included both men on his witness list, and he spoke with the property appraiser on the telephone. (*Id.* at 26-27.)

Mr. Scharg also did not interview the neighbor who would have testified about the timing of the fire, but Mr. Scharg learned from Petitioner what the neighbor would have said at trial. And because the prosecution listed the neighbor as a witness, Scharg would have had an opportunity to speak with her before trial. (*Id.* at 63-65.)

11

The preceding paragraphs suggest that Mr. Scharg investigated the case and was at least somewhat prepared for trial.  Even assuming that he was not as well prepared as Petitioner would have liked, it does not appear that any lack of preparation on Mr. Scharg's part was the reason for Petitioner's plea.  Although Petitioner initially stated on the day set for trial, that he wanted to proceed with the trial, he subsequently requested a break for lunch to consider the prosecutor's plea offer and to discuss some matters with Mr. Scharg.  The record indicates that, during the break, he had an opportunity to talk with Mr. Scharg, his wife, and his civil attorney.  Following the break, he accepted the prosecutor's plea offer and stated that no one had forced him to plead no contest.  He also stated that he was satisfied with Mr. Scharg's advice.

At a subsequent hearing on Petitioner's informal request to withdraw his plea, Petitioner maintained that the reason for his request was that he was innocent and that he had been unclear about some things at the time of his plea.  He said nothing about his plea being coerced by his attorney's lack of preparation.  (Mot. Hr'g Tr., 4-7,  Mar. 31, 2011.)  He decided to plead no contest after speaking with his civil attorney. (Evidentiary Hr'g, 52, 56, 72, June 9, 2011.)  The record does not support Petitioner's contention that he was coerced into pleading no contest by his plea attorney's alleged failure to prepare for trial.

### c. Alleged Conflict of Interest

Petitioner alleges that attorney Scharg operated under a conflict of interest by promising to file a motion to withdraw the plea, but failing to file the motion.

Although Petitioner contends that Mr. Scharg stopped acting as his advocate when Scharg refused to file a motion to withdraw Petitioner's plea, Mr. Scharg represented Petitioner at the hearing on March 31, 2011, and he informed the trial court then that Petitioner wanted to withdraw his plea because he was innocent.

Mr. Scharg explained at the subsequent evidentiary hearing that he did not file a motion to withdraw Petitioner's plea because he did not know the court's practices. Instead of filing a motion to withdraw, he wrote to the trial court and asked the court's advice on Petitioner's request to withdraw his plea. He claimed at the evidentiary hearing that the court advised him to wait for sentencing. He maintained that he would have filed a proper motion to withdraw the plea if the court had so advised him. (*Id.* at 67-69.) He stopped representing Petitioner when Petitioner requested the case file and indicated that he intended to hire another attorney. (*Id.* at 62-63.)

There was no conflict of interest. Petitioner merely disagrees with Mr. Scharg's manner of responding to his request to withdraw his plea.

### 3. Summary

The Court concludes for the reasons given above that Mr. Scharg's performance was not deficient and that the allegedly deficient performance did not prejudice the defense. Petitioner therefore has no right to relief on the basis of his claim about his plea attorney.

## C. Whether the State Court's Refusal to Set Aside the No-Contest Plea Violated Petitioner's Right to Due Process

In his third and final claim, Petitioner alleges that the state trial court violated his right to due process by declining to allow him to withdraw his no-contest plea. Petitioner

claims that the trial court should have permitted him to withdraw his no-contest plea because he consistently maintained his innocence and his plea was involuntary. Additionally, Petitioner contends that there was no physical or scientific evidence of guilt and his attorney refused to consult an expert on the cause and origin of the fire. Petitioner maintains that these reasons were sufficient to set aside his plea. The Michigan Court of Appeals, however, found no merit in Petitioner's claim.

A defendant has no absolute right to withdraw a guilty plea, *United States v. Martin*, 668 F.3d 787, 794 (6th Cir. 2012), or a no-contest plea, *Shanks v. Wolfenbarger*, 387 F. Supp.2d 740, 748 (E.D. Mich. 2005). Unless a plea violated a clearly-established constitutional right, the decision whether to allow a defendant to withdraw a no-contest plea is discretionary with the state trial court. *Shanks*, 387 F. Supp.2d at 748.

Petitioner alleges that there were sufficient reasons under state law to withdraw his plea, but the alleged failure to comply with the Michigan Court Rules on withdrawing a plea before sentencing is not a basis for habeas relief. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (stating that "federal habeas corpus relief does not lie for errors of state law"). In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Furthermore, the record indicates that Petitioner's plea was voluntary and knowing and that his plea attorney was not ineffective for recommending that Petitioner plead no contest. The plea agreement was favorable, and there was evidence that

14


Petitioner may have intentionally set the fire that destroyed his home. The trial court therefore did not deprive Petitioner of due process by denying his motion to withdraw the no-contest plea. The Court declines to grant relief on Petitioner's third and final claim.

### IV. Conclusion

Petitioner has not demonstrated that he is in custody in violation of federal law. Furthermore, the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable determinations of the facts. The state-court decisions certainly were not so lacking in justification that there was an error beyond any possibility for fairminded disagreement. The Court therefore denies Petitioner's habeas corpus petition.

### V. Denying a Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

5:14-cv-10140-JCO-CEB Doc # 14 Filed 12/09/15 Pg 16 of 16 Pg ID 983

Reasonable jurists would not disagree with the Court's resolution of Petitioner's claims, nor conclude that Petitioner's claims are adequate to deserve encouragement to proceed further. The Court therefore declines to grant a certificate of appealability on Petitioner's three claims.

SO ORDERED.

Date: December 9, 2015             s/John Corbett O'Meara
                                   United States District Judge


I hereby certify that on this date, December 9, 2015 a copy of this opinion and order was served upon counsel of record using the ECF system.

                                   s/William Barkholz
                                   Case Manager

16